**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

WALTER A. Z.,                          )   NO. 2:20-CV-08351-E
                                       )
              Plaintiff,               )
                                       )
     v.                                )   **MEMORANDUM OPINION**
                                       )
ANDREW M. SAUL, Commissioner           )
of Social Security,                    )
                                       )
              Defendant.               )
_____)


**PROCEEDINGS**

     Plaintiff filed a complaint on September 11, 2020, seeking review of the Commissioner's denial of benefits.  On October 21, 2020, the parties consented to proceed before a United States Magistrate Judge. Plaintiff filed a motion for summary judgment on May 10, 2021. Defendant filed a motion for summary judgment on June 9, 2021.  The Court has taken the motions under submission without oral argument. See L.R. 7-15; "Order," filed September 16, 2020.

///

///

**BACKGROUND**

Plaintiff filed an application for Supplemental Security Income on April 6, 2017, asserting disability since December 17, 2010, based on alleged back pain, knee pain and depression (Administrative Record ("A.R.") 209-16, 246; see also A.R. 278 (alleging a back injury, depression, mental problems and memory problems)).[1]  An Administrative Law Judge ("ALJ") reviewed the record and heard testimony from Plaintiff and from a vocational expert (A.R. 15-26, 32-61).

The ALJ determined that Plaintiff has severe thoracic spine degenerative disc disease, bilateral knee pain with chondromalacia, depression and a neurocognitive disorder (A.R. 18).  The ALJ found that Plaintiff retains a residual functional capacity for medium work, limited to simple, routine tasks and further limited by certain postural restrictions.  See A.R. 20-23 (discussing, inter alia, the "persuasive" opinions of consultative psychological examiner Dr. Bahareh Talei and state agency physicians).  The ALJ found Dr. Talei's opinions "overall more persuasive" as based on Dr. Talei's first-hand examination of Plaintiff (A.R. 23).  The ALJ determined that a person with this capacity could perform Plaintiff's past relevant work and also could perform other medium and light jobs existing in significant numbers in the national economy.  See A.R. 23-25 (adopting vocational expert testimony at A.R. 51-55).  The Appeals Council denied review (A.R. 1-3).

---

[1]     Plaintiff had filed prior applications for disability benefits, but these applications were denied on February 23, 2016.  See A.R. 84-94; see also A.R. 15-16, 102.

**STANDARD OF REVIEW**

Under 42 U.S.C. section 405(g), this Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used correct legal standards. <u>See</u> <u>Carmickle v. Commissioner</u>, 533 F.3d 1155, 1159 (9th Cir. 2008); <u>Hoopai v. Astrue</u>, 499 F.3d 1071, 1074 (9th Cir. 2007); <u>see also</u> <u>Brewes v. Commissioner</u>, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (citation and quotations omitted); <u>see also</u> <u>Widmark v. Barnhart</u>, 454 F.3d 1063, 1066 (9th Cir. 2006).

> If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. But the Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [administrative] conclusion.

<u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999) (citations and quotations omitted).

///

///

///

///

1                           **DISCUSSION**

2

3        Plaintiff argues that substantial evidence does not support the

4   ALJ's residual functional capacity determination because some of the

5   medical opinions the ALJ deemed "persuasive" assertedly involved

6   greater limitations than the ALJ ultimately found to exist.

7   See Plaintiff's Motion, pp. 5-8.  For the reasons explained below, the

8   Court finds that substantial evidence supports the ALJ's decision and

9   that the ALJ did not materially err in evaluating the medical opinion

10  evidence.

11

12  **I.    Summary of the Relevant Medical Evidence[2]**

13

14        In April of 2016, Plaintiff began treatment with the Los Angeles

15  County Department of Mental Health ("County") for "major depressive

16  disorder (recurrent, moderate)" (A.R. 447).  Plaintiff then said he

17  was patient and good at helping people, and he enjoyed cooking,

18  cleaning and reading, but he also said "he has not been able to enjoy

19  his hobbies while depression is more intense" (A.R. 448).  Plaintiff

20  reported a history of depression since age 12, and said he had

21  difficulty asking for help because he felt he should be able to take

22  care of things himself (A.R. 450).  Plaintiff had become increasingly

23  overwhelmed since losing his job in 2011 following a back injury, and

24  Plaintiff reported symptoms of depression including insomnia, memory

25

26  ─────────────────

27        [2]    Because the issues raised herein by Plaintiff concern
    only Plaintiff's mental abilities/limitations, the Court has not
    summarized the medical evidence relating to Plaintiff's physical
28  abilities/limitations.

                                  4

loss, anxiety, increased appetite, isolation, headaches, tachycardia, irritability, sadness, lack of energy, anhedonia and helplessness (A.R. 448, 450, 452, 454).  He claimed that these symptoms were affecting his ability to maintain stable housing and employment and to engage in social interactions (id.).  Plaintiff reported that he was unable to work certain jobs due to his back injury and was working part time jobs to earn income (A.R. 453).  Mental status examination showed a dysphoric mood, and Plaintiff reportedly was amotivational, isolated and withdrawn (A.R. 455-56).  Plaintiff, who was in the process of being evicted, was given a list of shelters (A.R. 460).

A follow up in June of 2016 reported that Plaintiff did not want to be depressed anymore and wanted a normal life (A.R. 483).  He was referred for weekly psychotherapy (A.R. 483-84).  Meanwhile, treatment notes from St. Vincent Medical Center in October of 2016 and February, March and April of 2017, reported that Plaintiff was not treating his depression (A.R. 541, 547, 555, 572, 581, 588, 595).  Psychiatric examination was normal during all of these visits (A.R. 542, 549, 556, 574, 583, 589, 597).

There are records, dated June, 2016 through June, 2017, reflecting semi-regular weekly therapy sessions with a County social work intern (A.R. 621-98, 731-35).  Most of this therapy appears to have centered around discussions concerning Plaintiff's unstable housing (id.).  Plaintiff had been prescribed Prozac in June of 2014 and had decided not to take it, but Plaintiff reported that he felt better with the regular therapy sessions (A.R. 679).  In August of 2016, Plaintiff reported that his unemployment was negatively

impacting his mental health and that he was interested in finding a
job (A.R. 671-72).  By September of 2016, Plaintiff reportedly had
lost his apartment, had lived in a shelter until he felt unsafe to do
so, and then was given a voucher to live in a hotel A.R. 663, 665,
667, 669, 672, 674, 676, 677, 681, 683, 685, 688, 691, 693, 694, 695).
Plaintiff subsequently reported some "isolation," and he said that he
had moved in with his brother, which had caused some conflict (A.R.
654, 656, 658).  By November of 2016, Plaintiff was homeless ("couch
surfing") again and had requested assistance with housing (A.R. 649-
50).  He was back in a shelter in January of 2017 and was complaining
about his living conditions (A.R. 630, 642, 644, 646).  In March of
2017, Plaintiff reported having had an altercation with someone at the
shelter, and said he was depressed after finding out that he had been
denied Social Security disability benefits (A.R. 628, 632).  Plaintiff
reportedly "did not appear to be gravely disabled at the time" and was
referred for follow up with his regular therapist (A.R. 624).
Plaintiff returned in June of 2017, seeking therapy and housing
assistance (A.R. 732-33).

    Plaintiff's next mental health treatment record reflects a follow
up with the County in April of 2018, when Plaintiff again reported
being adversely affected by his living situation, which then involved
shared housing (A.R. 804-09).  Plaintiff complained of daily
depression and intermittent anxiety, which reportedly affected his
ability to get along with others, maintain stability and obtain
employment (A.R. 805).  Plaintiff again indicated he had been
depressed since he was 12 years old (A.R. 805).  Plaintiff reported a
15-year history of working in retail (A.R. 806).  On examination,

Plaintiff manifested restless motor activity and appeared anxious and worried (A.R. 809).

II.  **Summary of the Medical Opinion Evidence**

Consultative examiner Dr. Bahareh Talei provided a Complete Psychological Evaluation dated June 15, 2017 (A.R. 724-28).  Dr. Talei reportedly reviewed some medical records from June of 2016 and January of 2017, which indicated Plaintiff had been diagnosed with "major depressive disorder in the moderate range," with symptoms that were consistent with Plaintiff's current report and presentation (A.R. 724).  Plaintiff came to the examination alone by bus and arrived promptly (A.R. 724).  Plaintiff was meticulously dressed and groomed, and was not malodorous, but he did arrive with a backpack and luggage (A.R. 724).

Plaintiff reported a history of psychiatric/psychologic treatment but no current mental health treatment (A.R. 725).  Plaintiff reported feelings of depression and anxiety related to an injury at work (A.R. 725).  Plaintiff had lived with his mother until two years earlier, at which time his mother had passed away (A.R. 725).  Plaintiff had been able to maintain his own residence until a year earlier, at which time he became homeless (A.R. 725).  Plaintiff then was staying in a shelter (A.R. 725).

Plaintiff was born in Nicaragua and immigrated to the United States in 1986 (A.R. 725).  Plaintiff said he had completed high school and some college (A.R. 725).  Plaintiff had vocational training

as a medical assistant (A.R. 725).  Plaintiff reported that he spent his days watching television and listening to music, taking public transportation or walks, managing his own funds from General Relief, and independently performing the activities of daily living (A.R. 726).

On mental status examination, Plaintiff reportedly was anxious, his affect was constricted, his effort was adequate, his response time and work pace were slow, his psychomotor slowing was evident, his immediate and intermediate memory were mildly diminished, his attention and concentration span were moderately diminished, and his current intellectual functioning was borderline with a full scale IQ of 70, but his fund of knowledge, his insight and his judgment were average (A.R. 726-28).  Dr. Talei diagnosed probable major depressive disorder (moderate, recurrent), and borderline intellectual functioning, and assigned a current Global Assessment of Functioning Score ("GAF") of 58.  See  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV-TR") 34 (4th Ed. 2000 (Text Revision)).[3]  Dr. Talei opined that Plaintiff would be able to understand, remember, and carry out short, simplistic instructions without difficulty, would have moderate inability to understand, remember and carry out detailed instructions, and would be able to make simplistic work-related decisions without special

---

[3]     Clinicians use the GAF scale to rate "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DSM-IV-TR, p. 34.  A GAF of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork)." (id.).

supervision (A.R. 728).  Dr. Talei indicated that Plaintiff was
somewhat socially inappropriate during the examination, so Dr. Talei
opined that Plaintiff would have mild inability to interact
appropriately with supervisors, coworkers and peers on a consistent
basis (A.R. 728).

In July of 2017, state agency physician Dr. D. Funkenstein
reviewed the record and indicated that Plaintiff would have "moderate"
limitations in certain areas of functioning (i.e., the ability to:
(1) understand, remember and carry out detailed instructions;
(2) maintain attention and concentration for extended periods;
(3) perform activities within a schedule, maintain regular attendance
and be punctual within customary tolerances; (4) sustain an ordinary
routine without special supervision; (5) complete a normal workday and
workweek without interruption from psychologically based symptoms; and
(6) perform at a consistent pace without an unreasonable number and
length of rest periods (A.R. 112-13).  When asked to explain certain
of these limitations, Dr. Funkenstein stated "CE," a reference to Dr.
Talei (id.).

On reconsideration in November of 2017, state agency physician
Dr. Jay S. Flocks affirmed the prior opinion (A.R. 118-35).  Dr.
Flocks stated that Dr. Talei's opinion was consistent with the
objective findings of Dr. Talei's examination and with other mental
health evidence in the file (A.R. 128).  Dr. Flocks mentioned the same
"moderate" limitations that Dr. Funkenstein had mentioned, with the
same references to "CE" where asked for explanation (A.R. 131-32).
Further detail was provided by the "DEA" (disability evaluation

analyst) as follows:


    A.    [Claimant] can understand, remember, and carry out a two-step command involving simple instructions.

    B.    [Claimant] able to sustain "cpp" [concentration, persistence and pace] for an 8 hr/workday in a 40 hr/workweek.

    C.    [Claimant] is able to interact appropriately or maintain socially appropriate behavior [with] peers, public and supervisors.

    D.    [Claimant] can adapt to changes or stress in work environment.


(A.R. 131-32). Dr. Flocks stated that he had read and reviewed the initial decision and he affirmed the decision as written (A.R. 132). Elsewhere in the reconsideration decision, Plaintiff is said to have a "MRFC" (mental residual functional capacity) for "simple, unskilled" work and the ability to perform "work . . . that is less demanding" than his past relevant work (A.R. 134-35). According to the reconsideration decision, Plaintiff's "condition [is] not severe enough to keep [him] from working" (A.R. 135).[4]

---

    [4]    Plaintiff himself gave testimony at the hearing arguably consistent with this conclusion. When asked what mental issues he might have in performing a simple job where he had to keep up and be there every day, Plaintiff replied, "For me, I would have to sleep in a normal, comfortable environment, peacefully, and have no roommate make loud noises, disturb my sleep. I'm a light sleeper, so once my sleeping is disturbed, it's hard for me to go back to sleep" (A.R. 50-51). Plaintiff did not identify any issue he might have with keeping up, or with
(continued...)

III.  **Substantial Evidence Supports the ALJ's Residual Functional Capacity Determination.**[5]

For claims filed after March 27, 2017 (such as Plaintiff's present claim), new regulations govern the evaluation of medical opinion evidence.  Under these regulations, ALJs no longer "weigh" medical opinions; rather, ALJs determine which opinion(s) are the most persuasive by focusing on several factors: (1) supportability; (2) consistency; (3) relationship with the claimant (including the length of treatment, frequency of examinations, purpose of treatment, extent of treatment, whether the medical source examined the claimant); (4) the medical source's specialty; and (5) "other" factors.  See 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The two most important factors in determining the persuasiveness of medical opinions are supportability and consistency with the evidence. See 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  ALJs must explain how they considered the factors of supportability and consistency, but need not explain how they considered any other factor.  See 20 C.F.R. §§ 404.1520c(b), 416.920c(b).  The new regulations also eliminated the term "treating source," as well as the rule previously known as the

_____

[4](...continued)
attendance, providing only he could sleep in a normal environment (A.R. 50-51).

[5]      The Court has considered and rejected all of Plaintiff's arguments.  The Court discusses Plaintiff's principal arguments herein.  Neither Plaintiff's arguments nor the circumstances of this case show any "substantial likelihood of prejudice" resulting from any error allegedly committed by the ALJ.  See generally McLeod v. Astrue, 640 F.3d 881, 887-88 (9th Cir. 2011) (discussing the standards applicable to evaluating prejudice).

treating source rule or treating physician rule, which formerly required special deference to the opinions of treating sources.  <u>See</u> 20 C.F.R. §§ 404.1520c, 416.920c; <u>Natalie E. v. Saul</u>, 2020 WL 6545860, at *3 n.4 (C.D. Cal. Nov. 6, 2020); <u>Martha R.L. v. Saul</u>, 2020 WL 1140433, at *3 n.6 (C.D. Cal. March 9, 2020); <u>Alonzo v. Commissioner</u>, 2020 WL 1000024, at *3 (D. Ariz. March 2, 2020); <u>see also</u> 81 Fed. Reg. 62560, at 62573-74 (Sept. 9, 2016).

The ALJ followed these new regulations in making the relevant findings based on the available record.  As noted above, the ALJ reportedly found "persuasive" the opinion evidence from Dr. Talei and the opinion evidence from the state agency physicians.  However, the ALJ found "more persuasive" Dr. Talei's opinion that Plaintiff would be able to understand, remember, and carry out short, simplistic instructions without difficulty and would be able to make simplistic work-related decisions without special supervision.  <u>See</u> A.R. 22-23.  The ALJ reasonably explained the preference for Dr. Talei's opinion, saying that the opinion had been based on a first-hand examination of Plaintiff (<u>id.</u>).

Substantial evidence supports the ALJ's reasoning.  In any event, the state agency physicians arguably agreed with the capacity Dr. Talei found to exist.  <u>See</u> A.R. 108 (stating, "I agree with the YMSS [psychological medical source statement] given for SRT's"); A.R. 128 (stating that Dr. Talei's opinion was consistent with the objective findings of Dr. Talei's examination and with other mental health evidence in the file).  Additionally, the "moderate" limitations in some areas of functioning that the state agency physicians deemed to

exist arguably were consistent with Dr. Talei's GAF assessment of 58

suggesting "moderate" limitations.  Furthermore, the state agency

physicians themselves expressly based their "moderate" limitations in

some areas of functioning on Dr. Talei.  See A.R. 112-13, 131-32

(stating "CE," i.e., consultative examiner Dr. Talei, when asked to

explain their opinions regarding certain limitations).


     The Court will uphold the ALJ's findings in this case as

supported by substantial evidence and free from any material legal

error.  See, e.g., Webster v. Commissioner, 2020 WL 760395, at *5

(N.D. Miss. Feb. 14, 2020) (under new regulations, when medical

opinions are at issue, reviewing court affirms ALJ's decision if ALJ

properly addressed supportability and consistency).


     Plaintiff asserts that the limitation to simple, routine tasks is

not sufficiently restrictive to account for Plaintiff's allegedly

moderate limitations in performing activities within a schedule,

maintaining regular attendance, being punctual, sustaining an ordinary

routine without special supervision, performing at a consistent pace

and completing a normal work day or work week without interruptions

from psychologically based symptoms (see Plaintiff's Motion at 7).

However, it appears from the reconsideration decision that the state

agency physicians (and the ALJ) adequately addressed these limitations

by finding Plaintiff capable of simple, unskilled work and by

accepting the premise that Plaintiff could sustain concentration,

persistence and pace for a normal work day and work week, could

interact appropriately with others, could adapt to changes or stress

at work, and (in short) could work notwithstanding Plaintiff's mental

1  problems (A.R. 131-32, 134-35).

2

3      The medical opinions in this case constitute substantial evidence

4  to support the ALJ's determination of non-disability. See Orn v.

5  Astrue, 495 F.3d 625, 631-32 (9th Cir. 2007) (opinion of examining

6  physician based on independent clinical findings can provide

7  substantial evidence to support administrative conclusion of

8  non-disability).

9

10     To the extent any of the evidence was in conflict, it was the

11  prerogative of the ALJ to resolve such conflicts. See Lewis v.

12  Apfel, 236 F.3d 503, 509 (9th Cir. 2001); see also Treichler v.

13  Commissioner, 775 F.3d 1090, 1098 (9th Cir. 2014) (court "leaves it to

14  the ALJ" "to resolve conflicts and ambiguities in the record").  When

15  evidence "is susceptible to more than one rational interpretation,"

16  the Court must uphold the administrative decision.  See Andrews v.

17  Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); accord Thomas v.

18  Barnhart, 278 F.3d 947, 954 (9th Cir. 2002); Sandgathe v. Chater, 108

19  F.3d 978, 980 (9th Cir. 1997).  The Court will uphold the ALJ's

20  rational interpretation of the evidence in the present case

21  notwithstanding any conflicts in the evidence.

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

14

**CONCLUSION**

For all of the foregoing reasons, Plaintiff's motion for summary judgment is denied and Defendant's motion for summary judgment is granted.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: June 14, 2021.

_____
/s/
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

15